30814.  BLIGE *v.* THE STATE.

DECIDED MAY 4, 1945.

*G. B. Cowart,* for plaintiff in error.
*Ralph L. Dawson, solicitor-general,* contra.

GARDNER, J. ■ There is a motion to dismiss the bill of exceptions. The bill of exceptions recites: "Now, within the time allowed by law and within twenty days from the date of judgment and order overruling said motion for a new trial as amended, comes Simon Blige, as plaintiff in error, and presents to the Honorable M. Price, judge of said court, who tried said case and overruled said motion for a new trial as amended, his bill of exceptions in said case. . . This January 1, 1945." However, the certificate of the trial judge reads: "I do certify that the foregoing bill of exceptions is true and specifies all of the evidence, and specifies all of the record material to a clear understanding of the errors complained of, and the clerk of the superior court of McIntosh County, Georgia, is hereby ordered to make out a complete copy of such parts of the record in said case as are in this bill of exceptions specified, and certify the same as such, and cause the same to be transmitted to the present term of the Court of Appeals, that the errors alleged to have been committed may be considered and corrected. *This 2d day of January, 1945.* M. Price, judge," etc. January 1 was the last day for presenting this fast bill of exceptions to the trial judge. It will be noted that his certificate bears date of January 2, 1945, one day beyond the twenty days provided by law for the bill of exceptions to be presented in order to give this court jurisdiction. The attorney for the plaintiff in error states in his argument and by letter to the court that, although the bill of exceptions shows otherwise, in fact it was not presented until the second day of January. The trial judge forwarded to the court a supplemental certificate certifying that although the bill of exceptions recited that it was presented to him within twenty days, which is allowed by law, and on January 1, 1945, as a matter of fact it was not presented to him until January 2 of the said year. The bill of exceptions is not subject to dismissal. In *Woolf* v. *State,* 104 *Ga.* 536 (3) (30 S. E. 796), the Supreme Court held: "A judge can not, after certifying in proper form that a bill of exceptions is true, by a supplemental certificate change or modify recitals of fact in such bill of exceptions contained. This court can not, and will not, consider a supplemental certificate of this character." There are certain exceptions as to when and how an original bill of exceptions may be supplemented by amendment. The facts in

the instant case, however, do not bring it within any of the exceptions. Code, §§ 6-810; 6-1401 et seq.; *Norris* v. *Baker County*, 135 *Ga.* 229 (69 S. E. 106), and cit. In the instant case the trial court certified that the bill of exceptions was presented within the time required by law, and on January 1, 1945. This court, therefore, is without authority to consider aliunde any record or statement of anyone, or further certificate of the court, concerning the truth of the allegations of fact in the bill of exceptions. The motion to dismiss the bill of exceptions is controlled by the principles of the law set forth above, considered in connection with the following provisions of the Code, § 6-1312: "No bill of exceptions shall be dismissed upon the ground that the same was not certified by the judge in the time required by law for tendering and signing bills of exceptions; but if it shall appear from the bill of exceptions that the same was tendered to the judge within the time required by law, a mere failure on his part to sign the same within the time prescribed shall be no cause for dismissal, unless it should appear that the failure to sign and certify the same by the presiding judge within the time prescribed by law was caused by some act of the plaintiff in error or his counsel." It follows that the motion to dismiss the bill of exceptions must be denied.

In stating that the attorney for the plaintiff in error admitted that the bill of exceptions, although reciting that it was presented on the first day of January, was as a matter of fact not presented until the second day of January, we wish to say, in fairness to counsel, that his contention in the case is that, while the first day of January was the time limit within which the bill of exceptions should have been presented, since the first day of January was a legal holiday the defendant had until the following day within which to present his bill of exceptions. With this view we can not agree. While the first day of January is a legal holiday, it is not dies non juridicus. The position of counsel would be true if the first day of January also had been the Sabbath day. *Wood* v. *State*, 12 *Ga. App.* 651 (78 S. E. 140); *Freeman* v. *Beneficial Loan Society*, 42 *Ga. App.* 294 (155 S. E. 786); *Hamer* v. *Sears*, 81 *Ga.* 288 (6 S. E. 810); *Lumpkin* v. *Cureton*, 119 *Ga.* 64 (45 S. E. 729); *Biggers* v. *Home Building & Loan Assn.*, 179 *Ga.*

429 (176 S. E. 38) ; *Cason* v. *State,* 60 *Ga. App.* 627 (4 S. E. 2d, 713) ; Code, § 102-102.

■ We will deal with the special grounds first. As to special grounds 1 and 2, we will treat them together. These grounds and the errors assigned thereon are as follows: "1. Because the court erred in charging the jury as follows: 'Now, gentlemen, I charge you in connection with this case. The offense charged in the bill of indictment in this case is that of burglary, and if you find beyond a reasonable doubt that this offense was committed as alleged by some one, and if you find beyond a reasonable doubt that soon thereafter the property described in the indictment was taken at the time the offense was committed, if any was committed, was found in the recent possession of the defendant on trial, if such possession is not satisfactorily explained consistent with his innocence, would authorize you to identify the defendant in whose possession it was found as the guilty party, and to convict him of the crime charged. But to do this you must be convinced from other evidence, that the offense charged, beyond a reasonable doubt, had been committed, and the whole evidence, taken together, must exclude every other reasonable hypothesis save the guilt of the accused.' The errors herein complained of are: (a) Said charge was incorrect statement of the law and was prejudicial to the movant. (b) Said charge amounted to a statement that the presumption arising from the possession of stolen property was a legal presumption rather than a presumption of fact. 2. Because the court erred in charging the jury as follows: 'I charge you in this connection, gentlemen, that if you find beyond a reasonable doubt that the property alleged to have been stolen in the commission of the crime as alleged in the indictment was recently thereafter found in the possession of the defendant Simon Blige, the defendant on trial, then you will apply the rule of law just given, with this further instruction, that the defendant had a right to explain that possession, if it was found to be in him, and it is the duty of the jury when such explanation is offered, to consider that explanation and determine whether or not it is satisfactory, and the burden does not rest on him to satisfy you beyond a reasonable doubt of the truth of that explanation, but to the reasonable satisfaction of the jury.' The errors herein complained of are: (a)

Said charge was an incorrect statement of the law and was prejudicial to movant. (b) That said charge in connection with that complained of in the first ground of this motion amounted to a statement that the presumption arising from the possession of stolen goods was a legal presumption or a presumption of law rather than a presumption of fact." In view of the whole charge we do not think that the exceptions are well founded; but under the facts of this case as shown by the evidence, which will be dealt with in the general grounds, we may concede, without deciding that question, that the case should not be reversed on the charge excepted to because "the verdict was demanded by the proof submitted." *Griffin* v. *State,* 86 *Ga.* 257 (4) (12 S. E. 409). It is well established that the presumption arising from the recent possession of stolen property is one of fact and not of law, and that the trial court in such cases should make this distinction clear in the charge to the jury. If such distinction is not made clear, in a close case as to the proof, it is the duty of the appellate courts to reverse the conviction. See *Culhbert* v. *State,* 3 *Ga. App.* 600 (60 S. E. 322), for a clear enunciation of the law on this principle. We have studied the excerpts in these amended grounds. Under the whole record in this case, the assignments of error on these grounds are not well founded.

■ Special ground 3 complains of error because the court failed to charge the principle of law applicable to knowingly receiving stolen property. In the instant case the wife of the defendant was permitted to testify for him. Her testimony injected into the case the defense of receiving stolen property and coincided with the statement of the accused at the trial. Counsel for the plaintiff in error states in this ground that, based on the testimony of the defendant's wife in connection with the defendant's statement, the court committed reversible error in not charging the law as to receiving stolen goods. The Code, § 38-1604, states: "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other." There are certain exceptions cited in the statute, but this case does not fall under either of them. Therefore it follows, as we understand the law, that the testimony of the wife in the instant case was without probative value, and insufficient as a matter of law to be the basis of an assignment of error. This being true, in the absence of a

written request, this assignment fails. In the instant case the indictment did not charge the offense of receiving stolen property. It is perhaps true that in a proper case, or by a request, the court may charge that if the evidence showed that the defendant was guilty of knowingly receiving stolen property, instead of being guilty as a principal, the verdict should be that of not guilty (*Mangham* v. *State*, 87 *Ga.* 549, 13 S. E. 558), but that question is not now before us.

4. Finally, we come to the general grounds. The evidence showed that the prosecutor had stored in his building a quantity of mink and coon hides of the value of approximately $5000; that the building was broken into and between $500 and $600 worth of hides were taken. In addition, the chief of police who investigated the case, and who was the principal witness, stated: "I started an investigation which led me to get a search warrant for a house owned by Simon Blige, the defendant. A State trooper and I executed the warrant by going to the defendant's residence and searching the house, and in the attic of the kitchen we detected a strong odor of coon and mink hides, and there was evidence that something had been stored there and dragged around in the dust of the loft; and there were a few hairs on the timbers. Information that we acquired there led us to another house owned by Simon Blige, which was located near Ben Blige's shop. We searched this second house and found the furs described by Mr. Bluestein in the attic of the left-hand front room. There were three bags containing sixty-one mink and twenty coon hides. The house was locked and the defendant said he had the key. It was about fifteen or twenty days after the place was burglarized that we found the furs. Mr. Bluestein had told us that sixty-one mink hides were missing and that is the exact number we found in the defendant's house. The house in which the furs were found was unoccupied at the time. At first he denied any knowledge of them, but later said that he and Perry Rutledge took them there. He said that Perry Rutledge brought the furs to the place where he lived, and they stayed there for a few days, and he and Perry moved them to a vacant house. The doors and windows of the house where we found the furs were locked and secured. At the preliminary hearing before Judge Wheeler the defendant said that Rutledge was in on it with him, and he has told me so many tales

444

that I can't keep track of them. First he denied knowing anything about it, then he claimed that Perry did it, then finally he told me that he and Perry committed the crime from start to finish. At first the defendant said Perry brought the furs to his house, but later he said him and Perry carried them there together, and that he and Perry moved them several days later to the house where we found them. He said he owned this house and he had the key. The house was locked." In his statement to the jury the defendant contended that Perry Rutledge brought the furs to his house.

In view of the whole record the court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed.  Broyles, C. J., and MacIntyre, J., concur.*